# CHARLESTON.

## Harrow *v.* Ohio River R. Co.

Submitted January 11, 1894.   Decided January 20, 1894.

1. JUSTICE OF THE PEACE—CERTIORARI.

   The remedy by writ of *certiorari*, given by chapter 110 of the Code to review the judgment of a justice, is not given as a matter of right, but is awarded by the court or judge for cause on proper case shown.

2. JUSTICE OF THE PEACE—RAILROAD COMPANIES—DAMAGES—CONSTRUCTION OF STATUTE.

   A railroad company by contract under seal bound itself to make and maintain necessary cattle-guards at the boundary-lines of the premises of H., which it failed and neglected to do. Its trains running through said premises frightened and drove H.'s horse off his premises, through the gap, where the cattle-guard was to be made, into the premises of an adjoining owner, where the track was fenced, whereby and by reason whereof said train struck the horse and caused its death. *Held*, the railroad company may be sued before a justice, and held liable therefor, as for a wrong, under section 26, c. 50, of the Code.

3. JUSTICE OF THE PEACE—SUMMONS—RAILROAD COMPANIES—CONSTRUCTION OF STATUTE.

   The summons to commence the suit before the justice may be served upon the freight and passenger agent of the company in the county where the suit is brought, and where such agent resides, according to section 34 of chapter 50.

4. JUSTICE OF THE PEACE—DISCRETION OF THE COURT—ATTORNEY-AT-LAW.

   The extent to which counsel may read to the jury from law-books sound law relevant to the case on trial, is left largely to the

discretion of the trial-judge, subject to review in case of abuse of discretion.

V. B. ARCHER and W. MILLER for plaintiff in error:

I.—*Injury does not constitute* prima facie *presumption of negligence. There must be proof of negligence in addition to proof of the injury.*—25 W. Va. 571; 27 Vt. 643; 16 Ill. 451; 30 Ill. 198; 40 Ia. 33; 14 Ind. 30; 50 Miss. 572; 26 Tex. 604; 42 Miss. 603; 35 Mich. 507; 33 Mo. 309; 4 Jones L. 432; 62 Mo. 562; 8 Nev. 111; 7 Am. & Eng. R. R. Cas. 588; 7 Am. & Eng. R. R. Cas. 590; 13 Am. & Eng. R. R. Cas. 534.

II.— *Where cattle come upon the track at a point where the railroad company is not bound by statute to fence, it is not, in the absence of negligence, liable for injuries to them.*—26 Ia. 549; 35 Ind. 515; 42 Ind. 173; 30 Ill. 451; 72 Ill. 537; 34 Ia. 506; 80 Ill. 72; 40 Ia. 337; 48 Mo. 558; 72 Ind. 107; 73 Mo. 465; 79 Mo. 196; 79 Mo. 432; 91 Ind. 295; 93 Ind. 254; 94 Ind. 245; 96 Ind. 450; 26 Tex. 604; 37 Ohio 554; 73 Mo. 456; 50 Miss. 572.

III.— *The mere fact of the killing or injury does not constitute any presumption of negligence; the specific negligent act complained of must be proved by the plaintiff.*—9 West C. Rep. 112; 27 Vt. 643; 16 Ill. 198; 30 Ill. 451; 40 Ia. 337; 14 Ind. 30; 42 Miss. 603; 50 Miss. 572; 35 Mich. 507; 33 Mo. 309; 4 Jones L. (N. Car.) 432; 8 Nev. 111; 35 Ia. 191; 78 Ky. 421; 26 Minn. 434; 39 Ark. 413; 40 Ark. 336.

IV.—Prima facie *case: How overcome.*

N. C. PRICKITT and W. A. PARSONS for defendant in error:

I.—*Justice did not err in overruling motion to quash returns of service of summons.*—Code, c. 50, s. 34; 85 Va. 512; 3 S. E. Rep. 123; 22 Am. & Eng. Ency. L. 119–126 and notes; Code, c. 52, s. 20; Id. c. 124, s. 2, 7; 13 S. E. Rep. 1009.

II.—*Objection to filing complaint properly overruled.*—Code, c. 50, s. 26, 49, 50; 26 W. Va. 583; 24 W. Va. 399; 30 W. Va. 327; 31 W. Va. 483; 8 W. Va. 63.

III.—*Justice did not err in permitting plaintiff's attorneys to read to the jury the law as set forth in the opinion of a Court*

*of Appeals.*—33 W. Va. 434; 16 S. E. Rep. 819; 4 Utah
46; 83 Va. 553; 1 Am. Lang. No. 4 p. 41–48.
IV.—*Justice did not err in overruling motion to set aside verdict.*
—35 W. Va. 438; 14 S. E. Rep. 43; 3 S. E. Rep. 701;
19 Am. & Eng. Ency. L. 940; Thorn. R'd Fen. 469–471;
100 N. C. 230; 32 S. C. 127; 7 Am. & Eng. Ency. L.
929–933; Thorn. R'd Fen. 313–317; 17 W. Va. 210;
32 W. Va. 436.

HOLT, JUDGE:

On the 22d day of January, 1892, plaintiff, J. L. Harrow,
brought suit before a justice in Jackson county against the
defendant railroad company for three hundred dollars
damages for negligently killing his horse. It was tried by
a jury. During the trial defendant saved by bill of excep-
tions various points ruled against him. The jury found a
verdict for the plaintiff for one hundred and thirty seven
dollars and seventy eight cents. Defendant moved for a
new trial. The justice overruled the motion, and gave
judgment. Defendant excepted and had all the evidence
certified and then presented its petition to the judge of the
Circuit Court for a writ of *certiorari* to the judgment; but
the Circuit Court judge refused the writ, and to such order
of refusal this writ of error was obtained.

The defendant assigns as errors the various points saved
by it in the action of the justice overruling its various
motions.

Error No. 1. The justice did not err in overruling de-
fendant's motion to quash the summons—it follows the
form given in the statute—nor in overruling the motion to
quash the return of its service, for the return shows service
on a freight and passenger agent of defendant residing in
the county at the time, no other officer *etc.*, being then
found in the county. See Code, c. 50, s. 34. And the
agent mentioned in this section by section 20 of chapter 52
is construed to include a depot or station agent in the
actual employment of the company residing in the county,
wherein the action is brought. See *Taylor* v. *Railroad Co.*,
35 W. Va. 328 (13 S. E. Rep. 1009).

Error No. 2 is based on the action of the justice in over-

ruling defendant's objection to the complaint filed by plaintiff. The pleadings in the justice's court are—first. the complaint by the plaintiff; second, the answer by the defendant. The complaint shall state, in a plain and direct manner, the facts constituting the cause of action, and, if more than one cause of action be stated therein, each shall be separately stated and numbered. Such pleadings are not required to be in any particular form, but must be such as to enable a person of common understanding to know what is intended. Either party may except to a pleading of his adversary, when it is not sufficiently explicit to be understood, or if it contains no cause of action or defence. If the justice deem the exception well founded, he shall order the pleading to be amended, and, if the party refuse to amend, the defective pleading shall be disregarded. Code, c. 50, s. 50.

There are two counts in plaintiff's complaint. No. 1 states in substance, that defendant so negligently and wrongfully ran and conducted its train that the plaintiff's horse was killed by defendant by such wrongful and negligent running of its train. To this statement, or count, no objection is made.

Count No. 2 states in substance, that defendant by written contract dated May 25, 1885, bound itself to make necessary cattle-guards at the boundary-lines of plaintiff's said farm, which defendant, though often requested, had neglected and refused to do; that defendant by running its train through plaintiff's farm drove plaintiff's horse from his land, where the cattle-guards ought to have been made, on to the adjoining land, where it was killed by the negligence of defendant in running its train. The objection to this count is that it alleges a breach of contract, and can not be joined with No. 1, which is for a wrong or tort pure and simple. I do not think this exception well taken, and it was properly overruled by the justice. By it the killing of plaintiff's horse is stated to be due in part to the negligence of defendant in not making the cattle-guards, as it had by written contract bound itself to do. And the fact, that it had bound itself by express contract to make the running of its trains through plaintiff's farm safe in this

respect to his horses, does not make the breach of it, which is in whole or in part the proximate cause of the killing of this particular horse, any the less a wrong within the meaning of the term as used in that part of chapter 50 of the Code, which relates to the pleadings. See *State* v. *Lambert*, 24 W. Va. 399; *Poole* v. *Dilworth*, 26 W. Va. 583.

Error No. 3. The counsel for plaintiff in his opening argument before the jury began to read a certain part of the opinion of the court in *Layne* v. *Railway Co.*, 35 W. Va. 438, 446 (14 S. E. Rep. 123). To this defendant objected, but the justice overruled the objection, and the counsel read from the opinion of the court delivered by Judge LUCAS, which states what was decided in the case of *Washington* v. *Railroad Co.*, 17 W. Va. 190. The law read seems to be good law and relevant to the case in hand and therefore not ground of error. *Gregory's Adm'r* v. *Railroad Co.*, 37 W. Va. 606 (16 S. E. Rep. 819).

If there was danger of misleading the jury, as there may have been, the defendant should have asked the justice to instruct them as to the different questions presented between the case then on trial before them and the one cited and read from, which was discussed and decided from the standpoint of a motion for a new trial on the ground of want of evidence or insufficient evidence, after a jury had found a verdict. Here nothing was said or read encroaching upon the province of the justice to expound the law, or in defiance of any instruction given; but it was a pertinent point of law from an analogous case, which only needed the qualification already mentioned to make it useful, rather than misleading, and no doubt was intended for the court as well as the jury, as no instruction had been given, and as it is a common practice in this state to give them after the arguments to the jury, as well as before. It is quite obvious that such practice is liable to abuse, but, for the reasons given, I do not think there was any such abuse in this instance. For a discussion of the subject see 1 Thomp. Trials, § 945, *et seq.; Com.* v. *Porter*, 10 Metc. (Mass.) 263; *Gregory's Adm'r* v. *Railway Co.*, 37 W. Va. 606 (16 S. E. Rep. 819) where the subject is fully examined and discussed.

Error No. 4. That the justice erred in not granting defendant's motion to set aside the verdict and grant a new trial; and this brings us to the facts of the case, as shown by the evidence certified by the justice. The plaintiff, J. L. Harrow, is the owner of a farm on the Ohio River Railroad on Muses bottom in Jackson county, W. Va., through which the defendant's railroad runs a distance of about forty poles, or one eighth of a mile. The plaintiff and defendant executed an agreement under seal, dated the 25th day of May, 1885, whereby plaintiff granted to the defendant the right of way in consideration of the sum of one hundred and ten dollars, and in consideration that the said company among other things should make and maintain necessary cattle-guards at the boundary lines of said premises, which were bounded on the lower or south side by the premises of Mr. Howell. The defendant never made any of the cattle-guards provided for in the contract, though it had been notified and requested by plaintiff to do so. He was the owner of the horse in question, a gelding three and a half years old and worth one hundred and fifty dollars. This horse was killed by the running of defendant's south-bound freight train on the night of the 15th and 16th of September, 1891, under the following circumstances:

On the night in question this horse and another of plaintiff's came out of plaintiff's hill field, which reached down within two hundred yards of the track, into the bottom field, through which the railroad runs, having pushed down the two fences between the two fields, and having crossed the track, which was not fenced. He was on the west or river side of the track, two hundred and fifty feet above the line between the land of Howell and plaintiff's land, about forty feet from the railroad; and, being frightened by the approaching down freight train, about three or four o'clock in the morning, he ran down the railroad keeping about forty feet from it, till he came to the dividing line between plaintiff and Howell, which was fenced on the dividing line from the right of way, and on the Howell farm the right of way was also fenced. The horse, instead of turning from the railroad and running off down this dividing fence toward the river, ran straight on into this

lane on the Howell land, along defendant's inclosed right of way, and after running about one hundred feet from the dividing line he got onto the track, and after running on the track some one hundred and fifty feet he was struck by the train, crippling him so badly that he had to be killed. The track was straight from where he started to where he was struck, about three hundred and fifty feet, and for about two hundred or three hundred yards above where he started, when scared by the train. The morning was clear when he was found. It had rained a little in the night. The railroad was nearly on a level with the place from which he started; where he was struck, there was a fill. The horse could not have passed from plaintiff's land into the lane where he was struck, had the cattle-guards been there as contracted for, but none were ever made. He would have remained in plaintiff's field, where he could have escaped either way, the track not being fenced. The horse was young, large, broken to work, and was worth one hundred and fifty dollars. The engineer of the south-bound freight train did not see the horse, but knew when they struck an obstruction at that place; was looking ahead at the time; had the cab window in front closed; from moisture on the window, or fog, could not see any distance ahead. The fireman's testimony is, in substance, the same.

The jury evidently based their verdict on the failure and neglect of defendant to build the cattle-guard. The evidence tends to show that the running of the train, together with such neglect, was the direct, proximate cause of the accident; for, if that had been built, the horse could not have run into the railroad lane on the Howell land where he was killed, but, in all likelihood, would have veered off on his own side.

The statutory writ of *certiorari* is intended as a method whereby the rulings of the justice, *etc.*, may be reviewed, especially his rulings granting or refusing to set aside verdicts; and the scope and tenor of the act show plainly that it was intended that the Circuit Court should be liberal in granting it, so far as it is a substitute for appeal from the judgment of a justice, so that the petitioner may have the judgment of the justice reviewed upon the merits, and such

judgment or order made upon the whole matter as law and justice may require. Yet the language of the act does not warrant the construction that the writ is given, as matter of right. See Code, c. 110, s. 4.

Upon a review of the judgment of the justice upon the merits, as it arises on a consideration of the law and evidence, we are of opinion that there is no error therein, and that the writ of *certiorari* was not improperly refused by the judge of the Circuit Court.

# CHARLESTON.

